IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DISENIA CANCEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 08 C 951 |
| v. | ) |
| | ) |
| CITY OF CHICAGO and JODY WEIS, | ) Honorable Milton Shadur, |
| SUPERINTENDENT of POLICE, | ) Presiding |
| Defendants | ) |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

### INTRODUCTION

Ordinarily Plaintiff would not seek class certification before the Defendants have answered or filed a motion to dismiss. However, Defendants have attempted in other recent cases (Gates v. Towery, 04 C 2155 and Kennedy v. City of Chicago, 06 C 4914) to moot the class claims by offering restitution to the named class representative, a practice some courts refer to has "predatory pick offs." Deposit Guaranty v. Roper, 445 U.S. 326, 338, 63 L.Ed.2d 427 (1980); Weiss v. Regal Collections, 385 F.3d 337,344 ( 3rd Cir. 2004)  The Seventh Circuit has not expressly ruled on predatory pick offs. However, the Seventh Circuit has held that this tactic does not moot the class' claim once a motion for class certification is filed. Susman v. Lincoln American Corp., 587 F.2d 866, 868-89 ( 7th

1


Cir. 1978)

In <u>Susman</u> the court held that when a motion for class certification is filed before a settlement offer is made, the class representative retains standing to represent the class. <u>Susman</u>, 587 F.2d at 868-69.  The Seventh Circuit reached the same conclusion in <u>Primax Recoveries, Inc., v. Sevilla</u>, 324 F.3d 544, 547 (7th Cir. 2003) and also held that defendants cannot be allowed to "delay the [class action] indefinitely by paying off each class representative in succession." See also<u>,</u> <u>Reed v. Heckler</u>, 756 F. 779, 786-89 (10th Cir. 1985); <u>Zeidman v. McDermott & Co., Inc.</u>, 651 F.2d 1030 (5th Cir. 1981); and <u>Weiss v. Regal Collections</u>, 385 F. 3d 337 (3rd Cir. 2004)

The City has not tendered restitution to Plaintiff. By filing this motion now Plaintiff preserves her standing, even if the City were to tender full restitution.

The City also often claims, albeit mistakenly, that <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 105 (1983) holds that when "a claim concerns arrest-related policies the plaintiff lacks standing unless he shows, at a minimum, that he is likely to be arrested again." <u>Lyons</u>, however, does not require a class representative who files suit while still suffering the adverse effects of the challenged policy to prove she will be rearrested. <u>Lewis v. Casey</u>, 494 U.S. 472, 481, 108 L. Ed.2d 400 (1990).

Class actions challenging transitory claims - cases where the requested relief can be provided before judicial review is likely to be complete - are subject to the "relation back" doctrine.  When the relation back doctrine applies, the putative plaintiff is not

2

required to establish that she is "reasonably likely" to again be subjected to the unconstitutional policy. The plaintiff must file the suit while she still is being harmed by the unconstitutional policy and the harm must be transitory, but the plaintiff is not then required to prove a likelihood of future injury.  Gerstein v. Pugh, 420 U.S. 103, 43 L. Ed.2d 54 (1975) and County of Riverside v. McLaughlin, 500 U.S. 44, 114 L. Ed.2d 49 (1991) are typical of this scenario.

In Lyons, the plaintiff filed suit challenging the use of a choke hold technique by Los Angeles police officers. Of necessity the suit was filed after the choke hold was released, a fact which was critical to the Supreme Court's analysis.  The plaintiff did not have standing to seek equitable relief at the moment suit was filed because by then the choke hold had been released. The plaintiff in Lyons, therefore, had to prove he was likely to be rearrested and choked.  Because it was unlikely the plaintiff would be arrested again, particularly under circumstances that might warrant the use of a choke hold, he did not have standing.

On the other hand, when suit is filed while the named plaintiff is still suffering the direct effects of the unconstitutional policy, the plaintiff has a live, justiciable controversy.  Under these circumstances, it is not necessary to establish a "likelihood" that the plaintiff will be arrested again. Delvin v. County of Kane, 308 F.3d 673, 677-79 (7th Cir. 2002); Whitlock v, Johnson, 153 F.3d 380, 384 (7th Cir. 1998).

In Sosna v. Iowa, 419 U.S. 393, 42 L. Ed.2d 532 (1975), for example, the plaintiff

filed a class action complaint challenging an Iowa residency rule. Sosna, 419 U.S. at 395-96. Anyone seeking a divorce in Iowa was required to live in the state for at least one full year before initiating divorce proceedings. Id. By the time her federal case reached the Supreme Court, Ms. Sosna was divorced. However, when Ms. Sosna filed her federal, class action suit, Iowa law expressly prohibited her from filing for a divorce because she had not lived in Iowa for one year. Her class action challenge to the residency rule, therefore, involved a continuing, adverse effect on her. Because the adverse effects were continuing when her federal suit was filed, Ms. Sosna was not required to prove she was likely to face the same problem in the future. Sosna, 419 U. S., at 400.

Gerstein v. Pugh, 420 U.S. 103, 43 L. Ed.2d 54 (1972) further illustrates the same point. There, a class of pretrial detainees challenged delays in their preliminary hearings. Gerstein, 420 U.S. at 105-06. The named class representatives had appeared in court for their preliminary hearings long before a class was certified and all of them were convicted before the case reached the Supreme Court. Id., at 111, n. 11. Neither their subsequent convictions nor the fact that class certification occurred after the named representatives had received preliminary hearings caused mootness. As the Court explained, "Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided before he is either released or convicted." Id. When the Gerstein plaintiffs filed suit, they were adversely affected by Florida's policy in that they had not received timely preliminary hearings. Their standing was set from the

moment suit was filed and they were not required to prove, or even allege, that they would be rearrested. For the same reasons, Plaintiff Cancel has standing to seek declaratory and injunctive relief because at the moment she filed suit she was still experiencing the unconstitutional effects of the City's policy.

With that background in mind, Plaintiff will now establish her right to certification of a b(3) class for damages for their due process claims and a (b)(2) class for the restitution and equitable claims.

## THE CLASS DEFINITIONS

Plaintiff seeks certification of two classes. The first is a 23(b)(3) class based on a federal due process claim. This class has a two-year statute of limitations ( Evans v. City of Chicago 434 F.3d 916, 935 (7th Cir. 2006)), and includes a request for damages, costs and attorneys' fees.  The due process class is limited by the following criteria: (1) the class member had a vehicle seized by a Chicago police officer after February 14, 2006; (2) the vehicle was detained by Defendants pursuant to Article 36 (720 ILCS 5\36-1 et seq.); (3) the car was detained for more than seven business days; ( 4) Defendants charged towing and storage fees; (5) Defendants did not allow the owner to post bond to secure the release of the vehicle; and (6) Defendants did not provide an opportunity for a prompt post-seizure hearing to establish Defendants' right to continue to detain the seized vehicle.

The second class seeks certification under Rule 23(b)(2) for restitution and

equitable relief. This class has a five-year statute of limitations( Raintree Homes v. Village of Long Grove, 209 Ill.2d 248,255-58, 807 N.E.2d 439 (2004)) and is based on state tort claims for unjust enrichment and restitution. Since damages are not requested for this class a five-year statute of limitations applies. Sundance Homes v County of Du Page, 195 Ill.2d 257, 284, 746 N.E.2d 254 (2001)

This class differs from the due process class in that the restitution class is not required to establish a constitutional violation. To prevail, the restitution class only needs to establish that it has suffered a detriment as a result of the City's retention of the class members' vehicle. HPI Health Care v. Mt. Vernon Hospital, 131 Ill. 2d 145, 150-51 (1989) The restitution class does not have to prove the City's policy or practice violates the Due Process Clause or even that the City engaged in wrongful conduct. Smithberg v. Illinois Municipal Retirement, 192 Ill. 2d 291 (2000).

The essential elements of an unjust enrichment case are a detriment to the class and a corresponding benefit to the defendant. HPI Health Care , 131 Ill. 2d 152,53. As the Illinois Supreme Court explained in Smithberg, "wrongdoing is not always a necessary element"( Smithberg, 192 Ill.2d 299), even an honest mistake will sustain an unjust enrichment claim. Martin v. Heinhold Commodities, 163 Ill.2d 33, 55, 643 N.E.734 (1994). Therefore, this class must prove that the Defendants are unjustly enriched as a result of the towing and storage fees they charge class members. See Norton v. City of Chicago, 293 Ill. App.3d 620, 628, 690 N.E.2d 119 ( 1997). In all other

respects the restitution class is the same as the due process class.

The 23(b)(2) class also seeks equitable relief in the form of a declaratory judgment and an injunction. The class definition is the same as are all the relevant Rule 23 considerations, as Plaintiff will now demonstrate.

**THE CLASSES MEET RULE 23'S CRITERIA FOR CLASS CERTIFICATION**

### A. The Proposed Class Definitions Are Sufficiently Precise.

In every class action the class representation must allege an identifiable class (Amchen Products, Inc., v. Windsor, 521 U.S. 591, 138 L. Ed.2d 689 (1997); Simpson v. Miller, 93 F.R.D. 540, 545 n. 11 (N.D. Ill. 1982)), and the class representative must be a member of the class. Whitlock v. Johnson, 153 F.3d 380, 383-84 (7th Cir. 1998); Hendrix v. Faulkner, 525 F. Supp. 435, 442 (N.D. Ind. 1981), cert. denied, 468 U.S. 1217 (1984). The proposed class definitions, however, do not require absolute identity of all possible class members. Alexander v. Q.T.S. Corporation, 1999 WL 573358 at 5, 7 (N.D.Ill. July 30,1999). As long as the operative facts are similar enough to suggest that many people will be affected in the same way, the class definition satisfies Rule 23.

Here, the proposed due process and restitution classes are precise and unambiguous. Cook County Teachers Union, Local 1600 v. Byrd, 456 F.2d 882 (7th Cir. 1972), cert. denied, 409 U.S. 848 (1973). The class definitions are the by product of Defendants' unconstitutional policy or practice. Only persons whose cars were seized and

impounded by Chicago police officers and who were charged towing and storage fees while the City detained the cars are included in the class. The class is further limited to those persons whose cars were detained for more than seven business days pursuant to Article 36. With these limitations, the class definition is sufficiently precise to satisfy Rule 23.

**B. The Proposed Classes Satisfy The Numerosity Requirement.**

The identified classes are so numerous that joinder of all members is impracticable. Gaspar v. Linvatev, 167 F.R.D. 51 (N.D. Ill. 1996); Swanson v. American Consumer Industries, Inc., 415 F.2d 1326, 1333 (7th Cir. 1969). Impracticability is determined by : (1) the size of the class; (2) the geographic dispersion of members; (3) the nature of relief sought; (4) the ability of individuals to press their own claims; and (5) the practicality of forcing re-litigation of common issues. Gomez v. Illinois State Bd. of Educ., 117 F.R.D. 394, 399 (N.D. Ill. 1987); Rosario v. Cook County, 101 F.R.D. 659, 661 (N.D. Ill. 1983); 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1762 (1986). The exact number of class members or their precise identities is not essential to class certification as long as there is a defined class which is sufficiently numerous. Evans v. United States Pipe and Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983); Toney v. Rosewood Care Center Inc. of Joliet, 1999 WL 199249 (N.D. Ill, March, 1999).

Here, the alleged policy affects hundreds of people annually. Classes involving far

fewer putative members are routinely certified. Williams v. Brown, 214 F.R.D. 484 (N.D. Ill. 2003)- a class of three hundred certified; Patrykus v. Gomilla, 121 F.R.D. 357, 361 (N.D. Ill. 1988)-class of fewer than 50 putative members certified. Plaintiffs, therefore, have satisfied the numerosity requirement for a due process class and for an even larger restitution class.

        C.      **Common Questions of Law and Fact Are Controlling.**

The commonality requirement of Rule 23 is satisfied when the factual and legal issues relate to standardized conduct by the defendants toward members of the proposed class. Whitlock v. Johnson, 153 F.3d 380 (7th Cir. 1998). Because the Defendants engaged in a single course of conduct resulting in injury to the restitution and due process classes as a whole, a common core of operative facts is present, and Rule 23(a)(2) is satisfied. Johns, 145 F.R.D. at 483, (citing Patrykus v. Gomila, 121 F.R.D. 357, 361 (N.D. Ill. 1988)). Once common issues of fact or law are alleged, it makes no difference whether the specific activities relating to each class member vary slightly. Williams, 214 F.R.D. at 489-93; Alliance to End Repression v. Rochford, 565 F.2d 975, 977 (7th Cir. 1977); Retired Chicago Police Ass'n v. City of Chicago, 141 F.R.D. 477, 485 (N.D. Ill. 1992).

To establish a procedural due process violation, Plaintiffs must show that: (1) the government deprived them of a protected property interest and (2) the deprivation occurred without adequate procedural safeguards. Cafeteria and Restaurant Workers

Union v. McElroy, 367 U.S. 886 L.Fd2d (1961). The essence of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 14 L. Ed. 2d 62 (1965) What process is due and when it is due is determined by evaluating three factors: (1) the private interest that is affected; (2) the risk of an erroneous deprivation and the probable value of additional procedural safeguards; and (3) the Government's interest, including fiscal and administrative burdens. Mathews v. Eldridge, 424 U.S. 319, 335, 47 L.Ed. 2d 18 (1976)

In North Georgia Finishing v. Di-Chem, 419 U.S. 601, 606,  42 L.Ed.2d 751 (1975), for example, the court struck down a statute that permitted impoundment of property and postponed all review until the trial on the merits.  The Georgia statute violated due process because:

> [A] bank account, surely a form of property, was impounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt .... without notice or opportunity for an early hearing and without participation by a judicial officer.

The Court reached the same conclusion in Sniadach v. Family Finance Corp., 395 U.S. 337, 339, 23 L. Ed.2d 349 (1969), and held a statute was unconstitutional because it permitted freezing wages without an interim hearing.  The wage earner had to wait for the trial on the merits, which meant that "in the interim the wage earner [was] deprived of his enjoyment of earned wages without any opportunity to be heard and to tender any defense he may have..." Id.

Sniadach and North Georgia Finishing take into account the  indisputable fact that

10

state and federal courts are clogged with cases so it is not unusual for a trial on the merits to be years away. Because that is the case, when the government seizes personal property, due process requires an informal hearing in advance of the trial. Krimstock v. Kelly, 306 F.3d 40 (2nd Cir. 2002) - explaining why Mathews is the correct standard.

Plaintiff acknowledges that when it comes to street encounters with the police, the right to a pre-seizure hearing usually must give way to the exigencies of the circumstances at the moment of seizure. Morrissey v. Brewer, 408 U.S. 471, 33 L. Ed. 2d 484 (1972). But once the vehicle is in police custody, the due process analysis is the same as any other case.  By then "the reasons that justify dispensing with the magistrate's neutral judgment evaporate." Gerstein, 420 U.S. at 114.  At that point, "the State's reasons for taking summary action (decrease) ... (while the) need for a neutral determination of probable cause increases significantly." ( Id.)  Allowing the police the latitude to seize property usually is a practical necessity, but once the property is in police custody some form of interim judicial or administrative review is feasible and necessary. Krimstock, 306 F.3d at 44-48.

Seizure of a car is among the constitutionally protected property rights that require a prompt, post-deprivation hearing in accordance with Mathews.  In Coleman v. Watt, 40 F.3d 255,261 ( 8th Cir. 1994) the Eighth Circuit held that when a car is seized a post-deprivation delay of more than seven days without a hearing violates due process.  A similar result was reached by the Ninth Circuit in Goichman v. Rhueban Motors Inc., 682

F.2d 1320, 1323-24 (9th Cir. 1982) and Stypman v. City and County of San Francisco, 557 F. 2d 1338, 1344 (9th Cir. 1977) - "A five-day delay in justifying detention of a private vehicle is too long. Days, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle ..." The Fifth Circuit upheld slightly longer delays but only because the car owner could immediately post bond and secure the release of the car pending trial. Breath v. Cronvich, 729 F.2d 1006,1011 (5th Cir. 1984).

A prompt, post-deprivation hearing was required, and the national consensus is that delays beyond a week are constitutionally intolerable. Krimstock, 306 F.3d at 48-55. Since Defendants policy or practice is to hold seized vehicles for more than seven business days without a hearing or the opportunity to post bond, the alleged policy is subject to due process review under the Mathews standard. The application of that due process standard applies to all class members so there is a common and predominate question of law.

D.    **The Typicality Requirement Is Satisfied.**

Plaintiff's claim has the "same essential characteristics as the claims of the class at large," so the typicality requirement of Rule 23(a)(3) also is met. De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983). In Edmondson v. Simon, 86 F.R.D. 375, 380 (N.D. Ill. 1980), the Court held that where the named-plaintiff's claims arise from the same practice or course of conduct and are based on the same legal theory, the typicality requirement is met. See National Organization For Women v. Scheidler, 172 F.R.D. 351 (N.D. Ill. 1997); Johns, 145 F.R.D. at 483. Here, Plaintiff was subjected to the

same policy or practice that Defendants apply in all Article 36 seizure cases so her claim is typical of the class' claim.

     **E.**     **Plaintiffs Fairly and Adequately Represent the Class.**

The Court must determine adequacy of representation under Rule 23 by examining: (1) whether conflicts of interest exist between the named representatives and the rest of the class members, and (2) whether the named plaintiffs' counsel will adequately protect the interests of the class. Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986). There are no conflicts between the named class representatives and the remainder of the class. Nor are Plaintiffs' interests antagonistic to the class.

When the class' attorneys "have been found to be adequate in the past, it is persuasive evidence that they will be adequate again." Beckless v. Heckler, 622 F. Supp. 715, 721 (N.D. Ill. 1985) In this litigation, the attorneys representing the interests of the Plaintiff class members have successfully represented civil rights claimants in other class actions. See Gates v. Towery, 430 F.3d 429 (7th Cir. 2005); May v. Sheahan, 226 F.3d 876 (7th Cir. 2000); Faheem v. Klincar, 841 F.2d 712 (7th Cir. 1988), Whitlock v. Johnson, 153 F.3d 380 (7th Cir. 1998); Williams v. Brown, 214 F.R.D. 484 (N.D. Ill.2003); King v. Walker, (cite) and Patrykus v. Gomilla, 121 F.R.D. 357, 301 (N.D. Ill. 1988). Plaintiffs, therefore, have satisfied all the core elements for (b)(3) certification.

     **F.  A Class Action is the Best Means of Resolving the Constitutional Issue**.

The practicalities of this litigation highlight the need for class certification.

Plaintiff cannot secure economically realistic relief for herself, except through a class action. Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 63 L.Ed2d 427 (1980). "A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorneys' fees, by allocating such costs among all class members ... ." Deposit Guaranty, 445 U.S. at 338, n.9. By securing reimbursement for her out-of-pocket expenses and allocating the fees among all class members, or to the City, Plaintiff can be made whole. Id.

The practical reality of class certification is to disperse costs and fees among thousands of class members thereby reducing the costs and fees directly payable by a named plaintiff. In the aggregate a class can effectively litigate a common constitutional issue. As individual litigants, class members are deterred by the cost and time involved in litigation of claims that usually are not much more than fifteen hundred dollars.

For all of these reasons Plaintiff prays the Court will certify classes under Rule 23(b)(3) and 23(b)(2).

Respectfully submitted,

S/Thomas Peters
THOMAS PETERS
MARY DeSLOOVER
ROBERT COTTER
ATTORNEYS FOR PLAINTIFFS
407 S. Dearborn, Suite 1675
Chicago, IL  60605
(312) 697-0022