IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DISENIA CANCEL and ISMAEL CANCEL,** | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 08 C 951 |
| v. | )<br>) |
| **CITY OF CHICAGO and JODY WEIS, SUPERINTENDENT of POLICE,** | ) Honorable Milton Shadur,<br>) Presiding |
| Defendants | ) |

## MEMORANDUM IN SUPPORT OF PETITION FOR PRELIMINARY INJUNCTION

Plaintiffs through their attorneys, Thomas Peters, Kevin Peters, Mary DeSloover, and Robert Cotter, state:

### INTRODUCTION

The City of Chicago tows and impounds tens of thousands of cars every year. Many of these tows and impoundments are based on Article 36 (720 ILCS 5/36-1 et seq.), which authorizes forfeiture actions for violations of state criminal statutes. Id. Article 36 does not require judicial review between the seizure of a vehicle and the decision by the State's Attorney to file a forfeiture action. Id. Article 36 also does not prohibit judicial review following the seizure but before the forfeiture action is filed. In that respect

1

Article 36 is similar to the Drug Asset Forfeiture Procedure Act that was at issue in *Smith v. City of Chicago*, 524 F.3d 834, 838 (7th Cir. 2008)

The *Smith* court held that due process requires a prompt, post-seizure hearing whenever the government seizes private property. *Smith,* 524 F.3d at 836, 838. The *Smith* court then ordered a hearing that follows the seizure but precedes the forfeiture trial, which is the same relief Plaintiffs seek in this case. Although *Smith* did not set a precise timetable for the interim hearing, the court relied extensively on the *Krimstock* cases from the Second Circuit. *Krimstock v. Kelly*, 306 F.3d 40 (2nd Cir. 2002) and *Krimstock v. Kelly*, 464 F.3d 246 (2nd Cir. 2006). In those cases a ten day limit was set, and Plaintiffs believe a similar limit should be imposed for Article 36 cases in Chicago.

In the following sections Plaintiffs first describe the City's procedures in Article 36 cases and then prove that those procedures flunk the *Smith* due process test. Plaintiffs then establish their right to a preliminary injunction.

## ARTICLE 36 PROCEDURES IN CHICAGO

Every car that is towed pursuant to Article 36 in Chicago is taken to a Chicago Police Department vehicle pound (Unit 168) at 650 W. 83rd Street. (Ex. 1, at 5, 6, and 79) Usually there are three officers (Hadac, Crane, and Pye), two civilian employees, and Chief Kudulis working at that location. (Ex. 1, at 14, 15, 39) When an Article 36 car arrives at the pound, one of the officers, usually Kristine Hadac, prepares the "paperwork" for that car. (Ex. 1, at 12, 13) She creates a file that identifies the vehicle by

VIN number, make, model, and owner and she requests the tow reports from the officer who authorized the tow. (Id.) A notice that the car is impounded also is mailed to the owner. (Ex. 2) That notice does not inform the owner of a right to a hearing because the City does not allow hearings at this stage of the impoundment process. (Ex. 1, at 19-28)

Once a car is in the CPD impound lot, storage charges accumulate at the rate of $10 per day for the first 6 days and $35 dollars a day thereafter. (Ex. 1, at 29) Owners also are charged $150 dollars for the vehicle tow. (Ex. 1, at 30)

After officer Hadac prepares the paperwork identifying the impounded car, she waits for the tow report from the officer who ordered the tow. (Ex. 1, at 12, 13) Until she has that report, officer Hadac cannot complete her file and her "paperwork" is not forwarded to the sheriff. (Ex. 1, at 19-22) In "a typical case, after a week, the paperwork (tow report) necessary to forward the information" to the sheriff is available. (Ex. 1, at 21) Officer Hadac then completes her file and a courier picks up Hadac's file and delivers it to the sheriff. (Ex. 1, at 22) Once the sheriff has received that file from the CPD pound, it usually takes about another week for the sheriff to inform CPD pound personnel whether the sheriff plans to seek forfeiture. (Ex. 1, at 23) So, in a typical case, CPD pound personnel know within two to three weeks whether the sheriff is planning to request a forfeiture action. (Id.)

In non-traffic cases, like burglaries or robberies, no hearing is provided by the City. (Ex. 1, at 19-28) Instead, the owner must wait for the City to voluntarily release the

3

car or for the State's Attorney to file a forfeiture action. (Id.)

CPD's post-impoundment process can taken one of two paths in traffic-related impoundments. First, if the sheriff elects to proceed with a request for forfeiture, no hearing is held until the forfeiture action is filed and a court date set. (Ex. 1, 18, 19) Usually several weeks will pass before the forfeiture action is filed and then additional time is needed to serve the owner and for the owner to appear with counsel in court. See 720 ILCS 5/36-1, 3. For now, Plaintiffs do not have the necessary documents to establish the average delay between seizure and first court appearance. However, it is likely the delay is more than 60 days, and the delay unquestionably is longer than the ten day limit set in *Krimstock*. See *Krimstock* 306 F.2d at 44-47 (2nd Cir. 2002).

A second path is followed for traffic related impoundments when the sheriff declines forfeiture. (Ex. 1, at 19-24 ) Once the CPD personnel at the impound lot are aware of the Sheriff's decision to decline forfeiture, they send a letter (Ex. 3) to the registered owner of the vehicle. (Ex. 1, at 24) They also release the "hold," which makes the vehicle eligible for return to the owner. (Ex. 1, at 24) This letter (Ex. 3) is the first written notice of a right to a hearing. (Id.)

The letter informs the owner that she has a right to a post-tow hearing within 15 days. (Ex. 3) This letter also instructs the owner to call the CPD pound for further information relating to the car and to the post-tow hearing. (Ex. 3) The City does not provide any other written information on the nature of the post-tow hearing, the location

4

of the hearing, or the date of the hearing. (Ex. 1, at 42-44)

When a post-tow hearing is held, the hearing officer is a Chicago police officer. (Ex. 1, at 14-19) The hearing officer is not a lawyer and, in some cases, has not read either Article 36 in its entirety or the relevant CPD directives and general orders. (Ex. 1, at 8-15)

At the hearing, the tow reports and, when applicable, the arrest reports are presumed truthful and accurate. (Ex. 1, at 52, 53) Those reports generally are not "under oath" (Ex. 1, at 52) and the officers who prepared the reports are not present to testify or to be cross-examined. (Ex. 1, at 68) The hearings are not tape recorded nor is there a court reporter present. (Id.) Mitigating circumstances are not considered by the hearing officer, who inevitably relies on the towing officer's report as conclusive evidence of the validity of the tow. (Ex. 1, at 82, 83)

To summarize, in non-traffic impoundments and in traffic related impoundments where the sheriff requests forfeiture of the vehicle, the first opportunity for judicial review is when the forfeiture case is docketed. Although precise information is not available pending further discovery, it is unquestionably true that more than 60 days pass before the forfeiture case is docketed. That delay is irreconcilable with *Smith*.

A hearing is provided for traffic related impoundments but only when the sheriff declines forfeiture review. In these cases, the "hearing" does not occur within 10 days of the impoundment, as *Krimstock* requires and *Smith* implicitly adopts as the standard. The

"hearing," when it finally is held, is a sham and bears no resemblance to a due process hearing. Therefore, as the following Sections prove, Plaintiffs are entitled to a preliminary injunction.

## THE CRITERIA FOR GRANTING A PRELIMINARY INJUNCTION

Plaintiffs must show: (1) a likelihood of success on the merits; (2) no adequate remedy at law; (3) irreparable harm if the injunction is not granted; (4) that they will suffer greater harm if the injunction is denied than Defendants will suffer if it is granted; and (5) that the injunction is not against the public interest. *Foodcom International v. Berry,* 328 F.3d 300, 303 (7th Cir. 2003); *Christian Legal Society v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006). Of these factors, the likelihood of success on the merits generally weighs most heavily. *Joelner v. Vill. of Wash. Park,* 378 F.3d 613, 619 (7th Cir. 2004); *Doe v. Dolton Elementary Sch. Dist.*, 694 F. Supp. 440, 443 (N.D. Ill. 1988). Plaintiffs need only show that their "chances are better than negligible" to prevail on the merits. *Kellas v. Lane*, 923 F.2d 492, 494 (7th Cir. 1990); (*Kinney v. Int'l Union of Operating Engineers*, 994 F.2d 1271, 1275 (7th Cir. 1993) Applying these standards, Plaintiffs are likely to prevail on the merits of their claim, as the following Section conclusively proves.

## PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

Disenia Cancel's vehicle was impounded based on Article 36, which commands the seizing agency, here the Chicago police, to deliver the vehicle "forthwith" to the sheriff. (Id.) Once that is done, the sheriff must notify the State's Attorney within fifteen

days that a vehicle is impounded and that the Sheriff is requesting forfeiture of the vehicle. (720 ILCS 5/36-1)  After that, the State's Attorney must either return the car to the owner or "forthwith bring an action for forfeiture." 720 ILCS 5/36-2. "Forthwith" is not defined in Article 36.

As applied here, vehicles that are seized for non-traffic offenses are detained until either the criminal case is resolved or the officer who ordered the tow agrees to release the impoundment hold. (Ex. 1, at 18, 19) There is no interim judicial or administrative review of these seizures or of their continued impoundment; the owner must wait for a ruling on the merits in the forfeiture action. (Id.)  Thus, whenever a vehicle is seized pursuant to Article 36 and held for forfeiture, based on an alleged non-traffic offense, weeks, and usually months, pass without any form of judicial or administrative review. That detention, without judicial approval, is unquestionably unconstitutional.  *Smith v. City of Chicago*, 524 F.3d 834, 838 (7th Cir. 2008)

The *Smith* court held that when a government agency seizes property for forfeiture, the property owner is entitled to a prompt, post-seizure hearing.  Smith, 524 F.3d 838. Since the *Smith* court relied on *Krimstock v. Kelly*, 306 F.3d 40 (2nd Cir. 2002), there is good reason to believe the post-seizure hearing must be held within ten (10) days of the seizure.

Plaintiff acknowledges that *Smith* did not impose precise time limits and instead remanded the case for further development of the facts.  However, the balancing test required by *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L.Ed.2d 18 (1976) resulted in a ten day limit in the *Krimstock* cases. See *Krimstock*, 306 F.3d at 42-44 *and Krimstock v.*

*Kelly*, 464 F. 3d 246 (2nd Cir. 2006). Similar time constraints are imposed in other circuits across the country. See *Propert v. District of Columbia*, 948 F.2d 1327, 1332-33 (D.C. Cir.1991); *Draper v. Coombs*, 792 F. 2d 915, 923 (9th Cir. 1986) - holding that impoundment of a car requires a hearing within days of the seizure.

In *Coleman v. Watt*, 40 F.3d 255, 261 (8th Cir. 1994) the Eighth Circuit held that when a car is seized, a post-deprivation delay of more than seven days without a hearing violates due process. A similar result was reached by the Ninth Circuit in *Goichman v. Rhueban Motors Inc.*, 682 F.2d 1320, 1323-24 (9th Cir. 1982) and in *Stypman v. City and County of San Francisco*, 557 F. 2d 1338, 1344 (9th Cir. 1977) As the court explained in *Stypman*, "A five-day delay in justifying detention of a private vehicle is too long. Days, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle ... ." *Stypman*, 557 F.2d at 1344. The Fifth Circuit upheld slightly longer delays but only because the car owner could immediately post bond and secure the release of the car pending trial. *Breath v. Cronvich*, 729 F.2d 1006,1011 (5th Cir. 1984). In the City of Chicago weeks, and often months, pass without any form of judicial or administrative review of non-traffic, Article 36 impoundments. Plaintiffs, therefore, are likely to prevail on this claim. *Smith,* 524 F.3d at 838.

The City's policy with respect to traffic-related, Article 36 impoundments, where the sheriff requests forfeiture, is unconstitutional for substantially the same reasons. In these cases there is no interim hearing and weeks pass before the forfeiture action is filed. The City's failure to provide interim, post-seizure hearings for non-traffic impoundment and for traffic impoundments when the Sheriff seeks forfeiture is a clear violation of

*Smith*. In both scenarios there is no form of interim review of the legitimacy of the tow or of the continued impoundment, a clear violation of *Smith*.

A different, but equally unconstitutional, policy is applied to traffic-related Article 36 impoundments, when the sheriff declines forfeiture. As to these cases, Defendants offer an untimely and constitutionally flawed hearing.

To begin with, the City does not provide notice of the date, time or location of the hearing. (Ex. 1, at 43, 44 and Ex. 3) The vehicle owner must rely on word of mouth from the officers stationed at the impound lot for any meaningful information as to when, where, and how the "hearing " will be conducted.  The Due Process Clause requires better notice when a valuable property right is at stake. Memphis Light, Gas & Water v. Craft, 436 U.S. 1, 56 L.Ed.2d 30 (1978).   Notice of the date, time, and location of the hearing must be in writing and cannot be left to the vagaries of conversations between vehicle owners and employees of the agency that seized their cars. *Id*, at 11-13. In other contexts the City provides reasonable notice of impoundment procedures (See City Ord. 2-14-132) so reasonable notice is not an onerous burden.

In addition to the constitutionally inadequate notice, the "hearing" is delayed for weeks and does not comport with *Smith*'s promptness criterion. Following impoundment for a traffic-related offense, the officers stationed at the impound lot (Unit 168) prepare paperwork that records the date the car arrived and describes the car and its condition. (Ex. 1, 16-20)  Then, however, those officers must wait for reports from the officer who ordered the tow, a process that can take a week or more. (Ex. 1, at 20-23)  During this

9

time a notice is sent to the owner informing her where the car is impounded (Exh. 2) but that notice does not refer to a hearing. (Id.) Nor does the City allow for hearings while the impound lot personnel are waiting for the tow officer's report. (Ex. 1, at 23, 24)

Once the tow report arrives, generally a week or more after the seizure, the impound lot personnel complete their file and leave it for a courier to hand deliver to the sheriff. (Ex. 1, at 19-21) Another week or more passes while the sheriff decides whether to request a forfeiture of the car. (Id.) No hearing is allowed while the sheriff is considering his options, but towing and storage fees are mounting daily. (Ex. 1, at 24) From the day the car is towed, fees accumulate. The tow results in a $150 dollar charge and $10 dollars a day are charged for the next six days. (Ex. 1, at 29, 30) Starting on the seventh day the storage fees are increased to $35 dollars per day .

Assuming a best case scenario, the sheriff declines forfeiture a week after the lot personnel sent their paperwork to the sheriff. By then the car has been impounded for two weeks. (Ex. 1, at 19-24) Unit 168 staff at the impound lot then mail a notice (Exhibit 3) to the owner. (Ex. 1, at 24, 25) This notice informs the owner for the first time that a) she can reclaim her car and b) she has the right to a hearing to contest the towing and storage fees. (Ex. 3) The notice does not describe where or when the hearing might be held but allows for 15 more days to conduct the hearing. (Ex. 3) Thus, a best case scenario would result in a hearing three to four weeks after the impoundment and, by then, more than $700 in fees are owed. These delays do not comport with *Smith* and are unnecessary. (See City Ord. 2-14-132(1) - which allows for hearings within 48 hours of

an impoundment in non-Article 36 cases.)

The constitutional onus is on the City to hold a prompt hearing and to provide reasonable notice of the hearing. Mullane v. Central Hanover Bank, 339 U.S. 306, 313, 94 L.Ed.2d 865 (1950) The City, however, unconstitutionally shifts the burden to the owner to demand a hearing after the owner receives an untimely and deficient notice. The process is skewed from the beginning. Mullane, 339 U.S. at 313-15.

When the government seizes property without a warrant, as is always the case here, the government has a constitutional duty to hold a hearing within days of the seizure. Mathews v. Eldridge, 424 U.S. 319, 335, 47 L.Ed.2d 18 (1976); Stypman, 557 F.2d at 1342-44. And the government must provide adequate notice of the hearing to the owner. Krimstock, 306 F.3d at 42-44. The City cannot send an untimely and inadequate notice and then insist that the owner demand a hearing. The hearing must be a matter of course and it must be preceded by timely notice that provides meaningful information as to when, where, and how the hearing wil be conducted. *Fuentes v. Shevin*, 407 U.S. 67, 80, 32 L.Ed.2d 556 (1972); *LaChance v. Erickson*, 522 U.S. 262, 266, 139 L.Ed.2d 695 (1998) - parties whose rights are affected are entitled to be heard and to enjoy that right they first must receive proper notice.

When a "hearing" finally is provided, the hearing is conducted by a police officer. In some cases the hearing officer has not even read all the provisions of Article 36 nor has she bothered to read the CPD's directives and orders relating to the "hearing."(Ex. 1, at 8) The hearing officer is never a lawyer or a judge. Nor does it make sense to presume that a police officer will be a fair and impartial judge of the conduct of other police officers. c.f.

11

United States ex rel Miller v. Twomey, 479 F.2d 701 (7th Cir. 1973)  At a minimum, vehicle owners are entitled to a hearing by a neutral and detached hearing officer with some knowledge of the relevant procedural and substantive law that applies to the hearing. See Morrissey v. Brewer, 408 U.S. 471, 33 L.Ed.2d 484 (1972)  None of these constitutional minima are provided by the City in Article 36 cases.

No record of the hearing is maintained other than the hearing officer's self serving notes.  (Ex. 1, at 49)  No witness ever appears to present evidence or testimony in support of the tow.  (Ex. 1, 49-52)  Instead the hearing officer presumes the reports of her fellow officers are true and correct. But see *McCollum v. Miller*, 695 F.2d 1044,1049 (7th Cir.1982) holding that an investigative "report, however vivid and apparently true, is not ... self-validating."

The City's Article 36 "hearing" is not a search for the truth or for an equitable result; it is a meaningless formality. The owner is allowed to challenge the legitimacy of the tow and the prolonged detention, but he cannot win. The towing officer's account is <u>always</u> believed and the mitigating circumstances described in Article 36 are not considered. The owner is allowed to vent his frustrations but he leaves a loser. Thus, in every respect the "hearing" the City begrudgingly offers in traffic related cases only, and then only when the sheriff declines forfeiture review, is unconstitutional from beginning to end.

## THERE IS NO ADEQUATE REMEDY AT LAW

As long as the City's policy remains in effect, constitutional injuries will occur daily.  Disenia Cancel is a typical victim.  Her car was impounded months ago and remains

in a City impound lot to this day. Because the towing and storage fees are substantial and increasing daily, every day that a hearing is delayed the vehicle owner is a) without her car and b) incurring mounting fees and costs. With older vehicles and owners of modest incomes, these delays make recovering their cars cost prohibitive. By now, for example, the fees and costs owed by Ms. Cancel to the City greatly exceed her ability to pay, and those costs and fees exceed the value of her car.

Delay benefits the City by increasing the fees and costs that are owed. But that undeserved gain to the City is more than offset by the harm it causes to law-abiding c itizens like Ms. Cancel. Therefore, any damage remedy that might exist is not adequate; the City's policy must be changed. See *Smith*, 524 F.3d at 836 and *Krimstock*, 306 F.3d at 58-64 - allowing for injunctions against similar municipal policies.

Furthermore, Defendants cannot maintain an unconstitutional system just because they are willing to pay damages. Davenport v. DeRobertis, 844 F.2d 1310 (7th Cir. 1988); Brownsburg Area Patrons v. Baldwin, 137 F.3d 503, 507 (7th Cir. 1998); Hoard v. Reddy, 175 F.3d 531 (7th Cir. 1999). This Honorable Court has cogently explained that even when a damage remedy exists, the plaintiffs "cannot fairly be compelled ... to sell their right" to due process. Pinzon v. Lane, 675 F.Supp. 429, 431 (N.D.Ill. 1987) Thus, damages alone will not provide an adequate remedy.

## **PLAINTIFF WILL SUFFER IRREPARABLE HARM**

Plaintiffs recognize that the "inadequacy of the remedy at law" factor is not the same as the irreparable harm criterion. The two factors, however, often overlap, as they do here. Plaintiff still is without her car because the City delayed her "hearing" for more than 30 days. By then, she already could not afford the City's storage fees and costs, and now

those fees exceed the value of her car.  In that respect, Ms. Cancel is representative of hundreds of vehicle owners who are placed in the same financial bind by the City.  Facts like these more than suffice to establish irreparable harm.  Krimstock, 306 F.3d at 58-65.

## THE BALANCE OF HARDSHIP FAVORS PLAINTIFFS

The final factor the Court must consider "requires a balancing of the hardships between the parties." *Ichiyasu v. Christie, Manson & Woods Int'l, Inc.*, 630 F. Supp. 340, 343 (N.D. Ill. 1986).  "The more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

In Smith the Court weighed similar competing interests and issued an opinion directing the District Court to, in effect, issue a permanent injunction.  Smith, 524 F.3d at 838.  That directive followed the *Smith* court's evaluation of the competing interests.  Id., at 837.  The court noted that the private interest involved was "great" and the inconvenience to the City was necessary, since "due process always imposes some burden on a governing entity."  Id.  The same analysis applies here.

## THE PUBLIC INTEREST WILL BE SERVED BY A PRELIMINARY INJUNCTION.

Here, not only does the likelihood of success strongly favor the Plaintiffs, a weighing of the likely hardships also favors the Plaintiffs.  Without an injunction, Defendants' unconstitutional policy will affect scores of vehicle owners every week. For some, the loss of their vehicle will cause severe hardship by making it difficult, perhaps impossible, to get to work or see any ailing parent or child.  Smith, 524 F.3d at 836-37.  All of the day to day activities that require a car will be jeopardized for these owners, some of

whom are completely innocent of any wrongdoing. Id. Even those who committed an infraction will not have the benefit of judicial review to determine whether continued detention of their cars is an unnecessarily severe punishment.

Furthermore, enforcing and protecting constitutional rights is of the highest public interest. *See Elrod v. Burns*, 427 U.S. 437, 373 (1976); *Tanford v. Brand*, 883 F. Supp. 1231, 1237 (S.D. Ind. 1995) ("[G]overnmental compliance with the Constitution always serves the common good."). Therefore, an injunction protecting the constitutional rights of the Plaintiffs and the putative class is in the public's interest.

## CONCLUSION

For all of these reasons the Court should issue a preliminary injunction.

Respectfully submitted,

S/ Thomas Peters
THOMAS PETERS
MARY DeSLOOVER
KEVIN PETERS
Attorneys for Plaintiffs
407 S. Dearborn, Suite 1675
Chicago, IL 60605
(312) 697-0022