```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

DISENIA CANCEL,                      )
                                     )
                 Plaintiff,          )
                                     )
     v.                              )       No.  08 C 951
                                     )
CITY OF CHICAGO, et al.,             )
                                     )
                 Defendants.         )
```

<u>MEMORANDUM OPINION AND ORDER</u>

Disenia Cancel ("Disenia") and Ismael Cancel ("Ismael")
(collectively "Cancels") filed a two-count Amended Class Action
Complaint ("Complaint") against the City of Chicago ("City") and
its Superintendent of Police Jody Weis ("Weis"),[1] asserting that
Cancels were deprived of their constitutional rights under the
Fourteenth Amendment to the United States Constitution to
reasonable notice and a prompt post-seizure probable cause
hearing after their respective vehicles were seized by Chicago
police officers (Complaint Count I ¶4, Count II ¶4).  Cancels
have now moved for certification, under Fed. R. Civ. P. ("Rule")
23, of multiple classes and subclasses of individuals who had

---

[1]  No offense or undue familiarity is of course intended by
the shorthand use of the Cancels' first names--a necessary
departure from this Court's regular practice of referring to
individuals solely by their last names as a matter of convenience
(as with Weis).  In this case convenience will also be served by
referring to defendants collectively as "City," which will be
treated as a singular noun even though it includes Weis as well.

vehicles taken from them by Chicago police officers.[2]  For the

reasons and on the terms stated in this memorandum opinion and

order, this Court certifies the proposed classes with some

modification.

## Background

## Seizure of Disenia's Vehicle Under Article 36

On or about January 3, 2008 Disenia's Dodge Stratus was

seized by Chicago police officers.  Disenia was a passenger in

her vehicle, which was being driven by her companion[3] to take her

to the hospital for emergency medical care.  Chicago police

officers stopped the vehicle and issued a ticket for driving with

a suspended or revoked license.  Disenia's car was towed first to

the Chicago Police Department ("CPD") District Lot for violation

of a City ordinance and then to the auto pound located at 701 N.

Sacramento.  When Disenia posted bond, her car was released and

---

[2]  Plaintiffs' Amended Motion for Class Certification
("Motion") and the earlier-filed Plaintiff's Memorandum in
Support of Class Certification ("Mem.") triggered a flurry of
submissions:  Defendants' Memorandum of Law in Opposition to
Plaintiffs' Amended Motion for Class Certification ("Resp."),
Plaintiffs' Reply in Support of Class Certification ("Reply"),
Defendants' Surreply in Opposition to Plaintiffs' Amended Motion
for Class Certification ("Surreply") and Plaintiffs' Response to
Motion To File Sur-reply ("Surreply Resp.").

[3]  Though this obviously has no bearing on the current
analysis, Disenia claimed that her companion was her husband, but
according to City he was a boyfriend to whom she was not married.
Just why such a nonissue should find its way into the parties'
presentations in support of and in opposition to a Rule 23
certification is, as Yul Brynner put it in his portrayal of the
King of Siam, a puzzlement.

2

she drove the car to her home.

On January 4 Chicago police officers towed the car yet again, this time to "Pound One" for an alleged violation of Article 36, which permits the seizure of vehicles that are used with the knowledge and consent of the owner in the commission of crimes, including driving with a license that was revoked or suspended for a DUI (720 ILCS 5/36-1 to 5/36-4).[4] On January 7 notice was sent to Disenia advising her that her vehicle had been seized again.

According to Disenia, City's policy and practice is to charge towing and daily storage fees to the owners of vehicles seized under Article 36. Disenia claims that City's policy and practice prohibited release of the vehicle until the decision has been made whether to seek forfeiture of the vehicle pursuant to Article 36. Disenia claims that for 30 days or more City failed to inform her of her right to a prompt post-seizure hearing, did not allow her to post bond and did not provide a proper hearing to determine the validity of the vehicle's continued detention.

On or about February 8 City advised Disenia that her vehicle would not be subject to forfeiture, but it would still not be released until she paid all accumulated towing and storage fees

---

[4] Citations to that statute as a whole will continue to take the form "Article 36," while citations to parts of the statute will take the form "Section --," omitting the prefatory "720 ILCS 5/36."

amounting to over $1000 at that time.  Fees have been mounting ever since, so that Disenia claims they now exceed the vehicle's actual value.

Seizure of Ismael's Vehicle for Investigation

On January 10, 2008, after a witness identified Ismael's vehicle as having fled the scene of an attempted theft, Chicago police officers seized the vehicle as part of the criminal investigation and towed it to Pound One.  Later that day Pound One sent Ismael a "vehicle hold notice."  City assessed towing and storage fees in accordance with City policy.

Ismael alleges that the notice he received was constitutionally defective, that his vehicle was detained without a judicial determination of probable cause and that he was denied the right to a reasonably prompt post-seizure hearing before a judicial officer.

Proposed Class Definitions[5]

Article 36 Classes Under Rule 23(b)(3)

1.   Article 36 Damage Class

Disenia seeks certification of an Article 36 Damage Class

---

[5] Cancels proposed certain classes in their brief in support of their original motion for class certification, but after City filed its Response they amended those proposals in their Reply.  Their efforts to refine the classes appear to have been taken in good faith, and City has had sufficient opportunity to respond to the newly proposed class definitions through its Surreply.  This opinion will therefore assess only the final incarnation of the proposed classes as reflected in the Reply.

under Rule 23(b)(3), comprising (Motion 1-2 and Reply 14-15):

> all persons who had vehicles[6] impounded by Chicago
> police officers from May 2, 2008 to the present,
> provided that (a) the vehicle was not immediately
> returned to the owner; (b) the vehicle was held,
> ostensibly pursuant to Article 36; (c) towing and
> storage fees were charged against the seized vehicle;
> and (d) the vehicle was held for more than seven
> business days without judicial review and without the
> opportunity to post bond to secure release of the
> vehicle.

2. Article 36 Damage Subclass

Disenia also seeks certification of an Article 36 Damage

Subclass under Rule 23(b)(3) for these car owners who did not

have a forfeiture trial (Reply 16-17):

> all vehicle owners who had vehicles towed pursuant to
> Article 36 after February 14, 2006, provided that
> (a) the sheriff or the prosecutor declined to file a
> forfeiture action or the CPD agreed to return the
> vehicle; (b) the decision not to file a forfeiture
> action or to return the vehicle voluntarily was made
> more than seven business days after the vehicle was
> impounded; and (c) the owner was required to pay
> storage fees and costs or his or her vehicle was sold
> at auction or crushed.

Article 36 Classes Under Rule 23(b)(2)

1. Article 36 Timeliness Class

Disenia seeks certification of an Article 36 Timeliness

Class under Rule 23(b)(2), comprising (Motion 2 and Reply 8-9,

18-19):

> all persons who have had, or will have, a vehicle towed

---

[6] For consistency's sake and to avoid potential confusion,
this opinion has replaced any "car" or "cars" references in the
proposed class definitions with "vehicle" or "vehicles."

5

by order of a Chicago police officer after February 14, 2003, provided that (a) the vehicle was towed pursuant to Article 36; (b) towing and storage fees were, or will be, assessed against the owner; and (c) the vehicle was impounded for more than seven business days without a judicial or administrative hearing.

2.   Article 36 Nature and Scope Subclass

Disenia also seeks certification of this Article 36 Nature and Scope Subclass under Rule 23(b)(2) to challenge the nature and scope of the CPD "hearing" (Motion 2 and Reply 8-9, 18-19):[7]

all persons who have had, or will have, a vehicle towed by order of a Chicago police officer after February 14,

_____

[7]   From the Reply it is clear that Disenia intends to abandon the Article 36 class definition she originally proposed under Rule 23(b)(2).  What is not clear at first glance is what class or classes she proposes in its stead.  At Reply 8-9 Disenia offers two new class definitions under Rule 23(b)(2): (1) a class challenging the "timeliness of all Article 36 post-tow hearings" (the "Article 36 Timeliness Class") and (2) a subclass challenging the "nature and scope of the CPD hearing" (the "Article 36 Nature and Scope Subclass").  Those definitions seem complete in and of themselves at first, but Disenia then provides a definition at Reply 18-19 for what she calls the Article 36 Rule "23(b)(2) restitution <u>class</u>" (emphasis added).  Disenia does not state whether that definition should supplant one or both of the earlier class definitions from Reply 8-9 or whether it should instead augment the "timeliness" class, the "nature and scope" subclass or both.  With no clear explanation provided, this Court has had to scour the briefs to determine the intended class definitions.  Having done so, it is confident that Disenia seeks certification of an Article 36 Timeliness Class that would apply to all Article 36 seizures and an Article 36 Nature and Scope Subclass that addresses the contested CPD "hearings" (Reply 8-9).  What appears at Reply 18-19 is understood to pertain to the Article 36 Nature and Scope Subclass only, because the "revised, restitution class definition" described there would limit the subclass so it addressed "only those case[s] where the post-tow 'hearing' was the one CPD provides."  In accordance with the just-stated understanding, this opinion has fashioned class definitions that draw together the splintered definitions offered in Cancels' briefs.

6

2003, provided that (a) the vehicle was towed pursuant
to Article 36; (b) towing and storage fees were, or
will be, assessed against the owner; (c) the vehicle
owner was provided a "hearing" by personnel from CPD
Pound No.1; (d) the sheriff or the prosecutor declined
to file a forfeiture action or the CPD agreed to return
the vehicle; and (e) the decision not to file a
forfeiture action or to return the vehicle voluntarily
was made more than seven business days after the
vehicle was impounded.

Hold-for-Investigation Classes

    1.    Rule 23(b)(3) Hold-for-Investigation Class

Ismael proposes this Rule 23(b)(3) Hold-for-Investigation

Class (Motion 4-6):

    all persons who had vehicles seized and impounded by
    Chicago police officers for "investigation" from June
    17, 2006[8] to the present, provided that the vehicle was
    subject to towing and storage fees for more than seven
    business days without judicial review and without an
    opportunity to post bond and secure its release.

    2.    Rule 23(b)(2) Hold-for-Investigation Class[9]

_____

    [8]  That date is two years before this Court granted leave to
file an amended complaint (see Motion ¶¶11-12; but see n.9).

    [9]  At Motion ¶12 Ismael seeks certification of a class
"under Rule 23(b)(3) and (b)(2)," but the same Motion's "prayer"
refers only to class certification under Rule 23(b)(3).  Further
complicating matters, the motion at first states that the
"restitution claim" (presumably the putative Rule 23(b)(2) class)
has a five year statute of limitations, while a two year statute
of limitations otherwise applies (presumably to the putative Rule
23(b)(3) class)(id. ¶11).  Later in the Motion's prayer (this
time for class certification under Rule 23(b)(3) alone), a five
year statute of limitations is proposed, even though a two year
statute was first requested for the Rule 23(b)(3) class.  While
this Court does not endorse such inconsistencies, it will grant
the moving party the benefit of the doubt, understanding that
what Ismael seeks is certification of classes under both Rule
23(b)(3) and (b)(2) and that the statutes of limitations are
respectively two and five years.

7

Ismael also proposes this Rule 23(b)(2) Hold-for-Investigation Class (Motion 4-6):

> all persons who had vehicles seized and impounded by Chicago police officers for "investigation" from June 17, 2003[10] to the present, provided that the vehicle was subject to towing and storage fees for more than seven business days without judicial review and without an opportunity to post bond and secure its release.

## Standing

_____City asserts that Cancels lack "standing" to bring their claims. But City's arguments that purportedly pertain to standing are in fact merits-based arguments that are not apropos to this Court's standing analysis. As <u>Arreola v. Godinez</u>, No. 07-1700, 2008 WL 4553059, at *6 (7th Cir. Oct. 14)(internal quotation marks and brackets omitted) warns, "the inherent problem with the idea of 'standing to bring a class action' is that it conflates the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative." To avoid conflating those distinct legal inquiries, "it is best to confine the term 'standing' to the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria" (<u>id</u>.).

Standing under "Article III requires that the plaintiff has

---

[10] That proposed date is five years before this Court granted leave to file an amended complaint (see Motion ¶¶11-12; but see n.9).

suffered an injury in fact which is fairly traceable to the challenged action of the defendant and likely, as opposed to merely speculative, to be redressed by a favorable decision" (id. at *5, quoting Payton v. County of Kane, 308 F.3d 673, 677 (7th Cir. 2002)). When a district court analyzes a plaintiff's standing it should not "become[ ] too enmeshed in the plaintiff's entitlement to relief," because doing so would lead it to "stray beyond the standing inquiry into the merits" (id. at *5). Instead this Court "must look at the case as a whole, rather than picking apart its various components to separate the claims for which the plaintiff will be entitled to relief from those for which he will not" (id.). Put simply, this Court is obliged to reject City's invitation to delve into the merits of Cancels' claims when analyzing standing. To that end this opinion will restrict its analysis of standing to the standard Article III inquiry--not to City's premature merits-related contentions.

For example, City Resp. 6 argues that Disenia's asserted injuries cannot be traced to the challenged action because she knew that her companion was driving her car with a revoked license. Disenia's Reply 11, however, raises a necessity defense to counter that argument. That poses a merits-based dispute that does nothing to help this Court consider the question of standing (or, indeed, the propriety of certifying any of the proposed classes). Similarly, City Resp. 9-12 challenges Ismael's

standing, asserting that he received all the process he was due. But Ismael's entire claim is based on his assertion that he and others like him did not receive due process. Again City seeks a premature resolution of the merits, rather than addressing class certification and the parties' standing to sue.

City Resp. 7, 12 and 17 also argue that neither Disenia nor Ismael advanced restitution claims in either the original Complaint or the Amended Complaint, so that they have no standing to assert such class claims under Rule 23(b)(2). That essentially urges a failure to meet the requirements of Rule 8(a) by not expressly pleading a restitution demand, thus barring the certification of classes that demand restitution.

But Rule 8(a) requires only "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends,... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Bontkowski v. Smith, 305 F.3d 757, 762 (7th Cir. 2002)(internal citations and quotation marks omitted) teaches that "the demand is not itself a part of plaintiff's claim, and so failure to specify relief to which the plaintiff was entitled would not warrant dismissal under Rule 12(b)(6)(dismissal for failure to state a claim)." Bontkowski, id. (internal quotation marks omitted) goes on to say that "[a]ny doubt on this score is dispelled by Rule 54(c), which provides

that a prevailing party may obtain any relief to which he's entitled even if he has not demanded such relief in [his] pleadings."

It follows that even if Cancels had not articulated demands for restitution in their pleadings, their standing would not be defeated. But that theoretical premise makes no sense in any event. It is obvious from the pleadings that Disenia wants her car back and does not want to pay the storage and towing fees at issue (Complaint Count I ¶¶31-32). Similarly, Ismael does not want the challenged storage and towing fees assessed against him and contests the lost use of his car (Complaint Count II ¶¶9-10, 13-14).

To turn to the issue of Article III standing as such, each of Cancels has alleged an "injury in fact" that is traceable to City's policies and redressable through this lawsuit. Thus both have demonstrated their standing to sue under Article III. Whether Cancels may serve as class representatives for others asserting the same claims is a separate question that this opinion addresses next.

Vehicles Delivered to Sheriff Within Seven Days of Seizure

As a preliminary matter, it is necessary to examine City's argument that the definitions of the Article 36 classes should exclude owners whose vehicles were delivered to the Cook County Sheriff ("Sheriff") within seven days of seizure. Vehicles

seized by the police under Article 36 are to be "delivered forthwith to the sheriff of the county of seizure" (Section 1). Once the vehicle has been delivered, City and the CPD cannot return the vehicle to its owner without authorization from the State's Attorney (Section 2) or remission by the Attorney General (Section 4).

Because City would be unable to grant the relief sought in cases where vehicles were delivered to the Sheriff within seven days of seizure, City Resp. 16 and Surreply 2-3 argue that Disenia must either join the Sheriff and State's Attorney as parties to this action or revise the proposed class definition to exclude such individuals. Not so--it is up to Disenia how she chooses to shape this lawsuit, although class membership must of course be limited to individuals whose injuries can be redressed by this action. Hence even though City has not yet provided specific examples of vehicles that were delivered to the Sheriff within seven days of seizure, the class definitions must exclude individuals whose vehicles were so delivered to the Sheriff.[11]

## Rule 23 Class Certification Standards

Plaintiffs seeking class certification bear the burden of showing that a proposed class satisfies "all of the criteria enumerated in Rule 23(a)--numerosity, commonality, typicality and

---

[11] City makes no claim that exclusion of those individuals would have any material effect on numerosity for purposes of certifying any of the classes under Rule 23(a)(1).

12

adequacy of representation--and fall within at least one
subsection of Rule 23(b)" (<u>Arreola</u>, 2008 WL 4553059, at *8; see
also, e.g., <u>Retired Chicago Police Ass'n v. City of Chicago</u>, 7
F.3d 584, 596 (7th Cir. 1993)). Class certification is precluded
if any of those requirements is not met (<u>Harriston v. Chicago</u>
<u>Tribune Co.</u>, 992 F.2d 697, 703 (7th Cir. 1993)).

<u>Rule 23(a) Requirements</u>

Because the four Rule 23(a) requirements adverted to in
<u>Arreola</u> are so well known and have been expounded so often, this
portion of the opinion will eschew repetition of the familiar
standards. Instead any relevant authorities will be referred to
in the later discussion as to the application of those standards.

<u>Rule 23(b) Requirements</u>

That same treatment will also be applied to the Rule 23(b)
requirements, which are conjunctive to the Rule 23(a) criteria
but are framed in disjunctive terms as between Rules 23(b)(2) and
23(b)(3). Because satisfaction of either of those provisions
suffices for class certification, considerable narrowing of the
analysis is often possible in an opinion such as this. Here
however Cancels seek class certification under both Rule 23(b)(2)
and Rule 23(b)(3) (with the latter's criteria commonly referred
to as "predominance" and "superiority"), so that both will be
considered here.

Application of the Standards

Rule 23(a) Requirements

    1.   Adequacy of Counsel

Because analysis of the adequacy of plaintiff's counsel cuts across all classes and subclasses in this case, it makes sense to speak to that issue at the outset. City neither questions the adequacy of plaintiffs' counsel to represent the interests of the putative classes and subclasses nor suggests that they are anything but experienced and competent class action litigators. Counsel for the putative classes identify themselves as not only experienced and competent but also as successful civil rights and class action litigators (Motion ¶9; Mem. 13, citing examples). Indeed, the same counsel have amply confirmed that self-characterization in other cases before this Court, and it sees no reason to be concerned that they will not do so here.

    2.   Article 36 Damage Class

Disenia asserts that there are hundreds, if not thousands, of putative class members in the Article 36 Damage Class (Motion ¶5, Ex. 1 at 10-12; Mem. 8). But City Resp. 20-21 contends that if this Court adopts certain suggested modifications to the class, Disenia cannot meet the burden of establishing "numerosity." Thus City argues that the class should be limited to vehicles seized after May 2, 2008 (id.). Based on City's estimate of seven seizures per month, it calculates the proposed

class number at 35, assertedly not meeting the numerosity standard (id.). Disenia Reply 15 agrees that the May 2, 2008 date applies, but in a different way, asserting that the date goes not to when a vehicle was <u>seized</u>, but rather to whether a seized vehicle continued to be impounded after that date.

Because this Court will not delve into the merits of that contested issue at this time, it accepts Disenia's class certification definition.[12] Thus damages may be limited by the May 2, 2008 date, but owners of vehicles seized before that date can still be class members if the impoundment of their vehicles continued thereafter and they meet the other class criteria.[13] In sum, even if City's estimate of seven seizures per month is accepted, numerosity has been met.

"Commonality" is met because the proposed class challenges

---

[12] See Appendix as to class certification and rulings on the merits. On that score City Resp. 20-21 also argues that numerosity would be defeated were arrestees excluded from the class. As discussed in the Appendix, excluding arrestees is a merits-based argument not appropriate for resolution at this time, so that City's argument has no current impact on numerosity.

[13] For the same reason, City's argument that Disenia is an improper class representative is equally unavailing. City Resp. 14 and Surreply 6 argue that because Disenia's vehicle was seized before May 2, 2008 she is an unsuitable class representative. But Disenia Reply 15 urges that the right to a prompt hearing should apply to all vehicles still being impounded at any time after May 2, 2008, regardless of the date those vehicles were initially seized. Because this Court will not resolve such a merits-based dispute on a motion for class certification, City's challenge to Disenia's representation of the class fails.

"standardized conduct" common to all putative class members
(Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998)). All
members of the proposed class had vehicles seized pursuant to
Article 36 and had storage and towing fees assessed in excess of
seven business days (Motion ¶6 and Mem. 9; Reply 15). Common
questions of law include whether City had a legal basis to retain
the vehicles, whether proper notice was provided and whether
putative class members received due process (Motion ¶7 and Mem.
9-12). Individualized factual variations need not destroy
commonality (Keele, 149 F.3d at 594), for a "common nucleus of
operative facts is usually enough to satisfy the commonality
requirement of Rule 23(a)(2)" (Rosario v. Livaditis, 963 F.2d
1013, 1018 (7th Cir. 1992)). Because class members share at
least one common question--whether they were afforded due
process--commonality has been satisfied (Wilfong v. Rent-A-
Center, Inc., No. 00 CV 680-DRH, 2001 WL 1795093, at *4-*5 (S.D.
Ill. Dec. 27)).

City Resp. 8-9 contests Disenia's "typicality," arguing that
her circumstances differ from those of the class members she
purports to represent because (1) her vehicle was towed away on
two separate occasions,[14] (2) she presents a necessity argument[15]

---

[14] But Disenia does not seek any relief related to the
initial tow of her vehicle (Reply 13).

[15] Disenia Reply 13 and 15 retort that her right to a
prompt hearing exists independently of the merits.

and (3) the police officer who ordered the tow did not send the necessary paperwork to Pound One for over 30 days.[16]  City Surreply 5-6 also asserts that a number of particularized factual inquiries defeat typicality.  But such "factual distinctions" between Disenia and other class members do not foreclose class certification (<u>de la Fuente v. Stokely-Van Camp, Inc.</u>, 713 F.2d 225, 232-33 (7th Cir. 1983)).  Here all class members' claims "have the same essential characteristics" (<u>Retired Chicago Police Ass'n</u>, 7 F.3d at 597), and Disenia's claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory" (<u>Arreola</u>, 2008 WL 4553059, at *9).  Whatever "particularized defenses [City] might have against certain class members" do not defeat typicality in this case (<u>Wagner v. NutraSweet Co.</u>, 95 F.3d 527, 534 (7th Cir. 1996)).

As for the "adequacy" requirement, Disenia asserts that she has no conflicts with other class members (Motion ¶9 and Mem. 13).  City makes no challenge in that regard.

3.   Article 36 Damage Subclass

Although Disenia does not directly assert numerosity as to this subclass, she has presumptively shown it to be sufficiently numerous to warrant class certification.  Unlike the Article 36

---

[16]  Disenia Reply 13 responds that the evidence shows such delays are not unusual.

Damage Class, this subclass has a start date of February 14, 2006. Because this subclass would not cover all of City's estimated average of seven cars seized under Article 6 each month--only those for which the CPD "hearing" was at issue--no monthly estimate can be made with any precision. But with City not having challenged the numerosity of the subclass, and given the early start date of the subclass, it is more than reasonable to assume that a goodly number of the hundreds of seizures falls within the class definition--enough to satisfy numerosity.[17]

Commonality is also met for the subclass. Common facts apply to all seized vehicles falling within the subclass definition, and common issues of law apply across the board, including (1) whether the notice provided to owners was constitutionally adequate, (2) whether owners are entitled to a hearing before a neutral hearing officer, (3) whether police reports can be presumed true and irrebutable and (4) whether a hearing officer may consider defenses and mitigating circumstances (Reply 14).

City makes no challenge to the typicality of Ismael as proposed class representative. That may well be because Disenia's claims do indeed "arise[ ] from the same event or

---

[17] Class definitions may be amended or altered at any time before final judgment (Rule 23(c)(1)(C), so that if discovery later shows the subclass to be insufficiently numerous City can then move to decertify the subclass.

18

practice or course of conduct that gives rise to the claims of
other class members and her claims are based on the same legal
theory" (Arreola, 2008 WL 4553059, at *9), and the presence of
one typical class representative suffices.  While individual
class members may differ in terms of their damages based on how
long their vehicles were held, the value of those vehicles and
other factors, those differences are slight compared to the
common issues (Carnegie v. Household Int'l, Inc., 376 F.3d 656,
661 (7th Cir. 2004)).

As with the Article 36 Damage Class, Disenia has shown that
she is an adequate representative of the subclass.  Likewise,
class counsel is deemed competent to represent the subclass, so
the adequacy requirement has been met.

4.   Article 36 Timeliness Class

Because the Article 36 Damage Class has been found
sufficiently numerous for class certification, it follows a
fortiori that this class is sufficiently numerous as well:  It
has a statute of limitations that runs five years, while the
Article 36 Damage Class cuts off damages in May 2008.  Likewise,
this class presents common issues of fact and law that challenge
City's policies and practices.  Although City claims that owners
seeking restitution of their vehicles would be required to
establish their individual entitlements to such restitution, that
inquiry does not defeat commonality here (Keele, 149 F.3d at

594).  Finally, Disenia's claims are typical of the class at large, and she can adequately represent the class.[18]

     5.   Article 36 Nature and Scope Subclass

Applying a statute of limitation going back five years rather than just two, this subclass reaches further back in time than the Article 36 Damage Subclass, presumptively bringing even more class members into its fold and again satisfying numerosity a fortiori.  Further, Rule 23(a)'s commonality and typicality requirements are met for this subclass for the same reasons as for the Article 36 Damage Subclass.  Lastly, City makes no challenge to Disenia's adequacy to represent this subclass, and indeed it appears that her claims meet the test already twice quoted from <u>Arreola</u>, 2008 WL 4553059,  at *9.

---

[18]  City presents certain challenges to this class that do bear brief discussion.  First, City Resp. 18 n.5 says that if class members seek restitution of vehicles that have been constructively delivered to the Sheriff, City would be unable to provide such restitution because the Sheriff and State's Attorney are necessary parties.  That issue, however, need not be addressed at this juncture.  Should the class succeed on the merits, that question and others like it may be timely presented when relief is determined.  Rest assured that this Court will issue no orders for restitution with which City cannot comply.  Second, City Resp. 19 argues that the class must exclude owners of vehicles towed where the CPD had probable cause to do so.  But here the legitimacy of the seizure itself is not the central issue in this case, where the predominant issue is instead whether vehicles were retained without a proper and timely hearing.  If probable cause is a defense, City will have ample opportunity to present its argument at the proper time.  Finally, City Surreply 5 states that any class seeking restitution should be limited to owners whose fee payments were "unjust."  City can rest assured that this Court will pay heed to the law and will make certain that class members make the proper showing.

6.    Rule 23(b)(3) Hold-for-Investigation Class

As to numerosity, Ismael asserts in Motion ¶13 that he and hundreds of other individuals are potential class members, and because their individual claims are modest it would not be cost-effective to litigate hundreds of such small claims derived from a single challenged policy or practice.  City advances no suggestion that the estimated number of class members is exaggerated.  Because the court is confident that the estimate has been made in good faith, it finds that numerosity has been met (<u>Radmanovich v. Combined Ins. Co. of Am.</u>, 216 F.R.D. 424, 431 (N.D. Ill. 2003)).

As to commonality, the proposed class challenges "standardized conduct" common to all putative class members (<u>Keele</u>, 149 F.3d at 594).  All had vehicles that were allegedly seized by Chicago police officers, held for investigation and made subject to towing and storage fees for more than seven business days without an opportunity to post bond and without a prompt post-seizure hearing (Motion ¶¶14, 16; Reply 22-23).  Hence the putative class presents common questions of law, including whether City's policy or practice violates due process and whether City was unjustly enriched as a result (Motion ¶15).  Because those facts and legal questions are common to all class members, commonality is satisfied.

Ismael's claims are typical of all putative class members'

claims.  His vehicle was allegedly seized by Chicago police officers and held for investigation, and it was subject to towing and storage fees for more than seven business days without an opportunity to post bond and without a prompt post-seizure hearing that comported with his due process rights (Motion ¶16; Reply 22-23).  Those allegations "have the same essential characteristics as the claims of the class at large" and are thus "typical" (<u>Retired Chicago Police Ass'n</u>, 7 F.3d at 597).

Ismael can "fairly and adequately protect the interests of the class" (Rule 23(a)(4)).  As he asserts, he has no conflicts with the class members (Motion ¶17), and City raises no doubts to the validity of that claim.  His interest in the case is sufficient to ensure "vigorous advocacy" on behalf of the class, and his legal counsel has been found to be experienced and competent to handle class litigation.  That being so, all of the elements of Rule 23(a) are met for this proposed class.

7.   Rule 23(b)(2) Hold-for-Investigation Class

Class definitions are the same for this class and the Rule 23(b)(3) Hold-for-Investigation Class, except that this class' start date goes back an additional three years under the longer statute of limitations that applies to Rule 23(b)(2). Accordingly, the analysis of the Rule 23(a) standards as applied to the Rule 23(b)(3) Hold-for-Investigation Class applies with equal force here.  Enough said.

<u>Rule 23(b) Requirements</u>

     As stated earlier, Cancels look to both Rule 23(b)(2) and Rule 23(b)(3) for class certification. Rule 23(b)(2) requires that defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole," while Rule 23(b)(3) requires showings that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual class members" and (2) "a class action is superior to other methods of...adjudication," as well as prescribing factors to be considered in making those two determinations.

     Each proposed class qualifies under Rule 23(b)(2), at least as to equitable relief. Cancels have alleged that City "act[ed] on grounds generally applicable to the class[es and subclasses]," and they seek equitable remedies for the classes and subclasses "as a whole" (Rule 23(b)(2)).

     What remains then is to consider the predominance and superiority requirements of Rule 23(b)(3). Those requirements will be examined successively.

     Although predominance calls for a more rigorous inquiry than do commonality and typicality (<u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623-24 (1997)), it is not foreclosed by the mere existence of factual or legal differences within a class (<u>Arenson</u>

v. Whitehall Convalescent & Nursing Home, Inc., 164 F.R.D. 659, 666 (N.D. Ill. 1996)). Instead what is required is that a proposed class be "sufficiently cohesive to warrant adjudication by representation" (Amchem Prods., 521 U.S. at 623) or, stated otherwise, that there be "an essential common factual link between all class members and the defendant for which the law requires a remedy" (Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc., 231 F.R.D. 280, 284 (N.D. Ill. 2005)).

Here what has been said in the Rule 23(a) analysis also shows that in each instance the focus of the litigation will be shared common questions, rather than individualized issues (see Adams v. R.R. Donnelley & Sons, Nos. 98 C 4025 and 96 C 7717, 2001 WL 336830, at *18 (N.D. Ill. Apr. 6)). Indeed, by carving out subclasses "plaintiffs have further enhanced the comparative predominance of those common questions over individualized issues" (Smith v. Nike Retail Servs., Inc., 234 F.R.D. 648, 666 (N.D. Ill. 2006)).

Differences in class and subclass members' potential for recovery of damages do not prevent a predominance finding (de la Fuente, 713 F.2d at 233). This Court has available to it a number of "imaginative solutions to problems created by the presence in a class action litigation of individual damage issues" (Carnegie, 376 F.3d at 661), and it is equipped to address such issues should they present themselves (see, e.g.,

<u>Adams</u>, 2001 WL 336830, at *17)).

City Resp. 12-13 attempts to defeat predominance by pointing (1) to individual differences as to the nature and extent of the process offered to each potential class member and (2) to what it says would be individualized questions of what constitutes "unjust" retention (<u>id</u>.), while its Surreply 5-6 identifies other particularized factual inquiries said to be necessary to determine whether any particular individual is a member of one or more of the proposed classes and subclasses. But those inquiries are generally commonplace, or at least not so cumbersome as to defeat the Rule 23(b)(3) predominance requirement. Questions as to the circumstances of each seizure--such as when the seizure took place, whether the vehicle was returned to the owner, whether fees were assessed and whether forfeiture was sought-- should be easily ascertained in discovery. Those and other individual questions cannot be said to <u>predominate</u>. Instead the predominant question that applies across all classes is whether challenged City policies and practices are valid (<u>Young v. County of Cook</u>, No. 06 C 552, 2007 WL 1238920, at *7 (N.D. Ill. Apr. 25)).

That leaves as the last remaining question whether a class action provides a superior vehicle for handing the controversy. Class certification of the various classes and subclasses--even though they may present a need for careful administration and

individualized assessment of relief--imposes far fewer problems
than the prospect of separate lawsuits for each individual class
member, each advancing his or her own comparatively small
separate claim (see <u>Warnell v. Ford Motor Co.</u>, 189 F.R.D. 383,
388 (N.D. Ill. 1999)).  Litigating claims separately risks
inconsistent determinations on common issues.  Moreover,
individual lawsuits would require multiple courts to evaluate the
same evidence and analyze the same policies and practices in what
would amount to a wastefully inefficient enterprise.  That being
the case, a class action is plainly a superior means for
adjudicating the common claims presented here.

Conclusion

In summary of what has gone before:

1.  With modest limitations discussed earlier, Rule
23(a) has been satisfied as to each of the classes and
subclasses.

2.  Both Rule 23(b)(2) and Rule 23(b)(3) have been
satisfied as well.

As a procedural matter, Cancels are ordered to amend the
Complaint further to the extent necessary to conform to the
current class and subclass definitions.  This action is set for a
status hearing at 9 a.m. December 10, 2008 to discuss the
timetables for those open items and for further proceedings in

this action.

_____

Milton I. Shadur
Senior United States District Judge

Date:  December 4, 2008

<u>Appendix</u>

As this Court has often said in earlier class-action cases, <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177 (1974) announced over three decades ago that "[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." While <u>Eisen</u>'s admonition has attained near-gospel status in innumerable cases since then, <u>Szabo v. Bridgeport Machs., Inc.</u>, 249 F.3d 672, 677 (7th Cir. 2001) has said that <u>Eisen</u> does not prevent a district court from making a preliminary inquiry into the merits of a case when such an inquiry is necessary to determine the propriety of certifying a class. Apparently emboldened by <u>Szabo</u>, City has advanced a number of merits-based contentions.

That entire subject has been relegated to this Appendix because an examination of the issues thus advanced by City reveals that none of them needs resolution to determine the appropriateness of class certification. Instead such classic merits-related issues, examples of which are set out here, will be deferred for another day.

Thus City Resp. 15-16 and 19-20 and Surreply 3-5 contend that arrestees should be excluded from the proposed classes because they purportedly receive all the process they are due at hearings before criminal court judges or through their ability to

seek a court order. In turn Cancels' Reply 20-22 and Surreply Resp. 4-6 argue that none of City's contentions demonstrate that arrestees were afforded all the process due to class members.

City Resp. 10-11 also claims that Ismael waived his opportunity to have a hearing, thereby waiving (or more accurately forfeiting) his right to complain now that he was not afforded his due process rights. Cancels' Reply 24-25 denies effecting such a waiver (or forfeiture), asserting that the "hearing" to which City says Ismael was entitled was a "faux process" that did not require exhaustion. Civil rights litigants, Ismael contends, are not obligated to pursue remedies that are "inadequate to the point that [the remedy] is meaningless or nonexistent" and are not obligated to waste time pursuing a futile remedy (Surreply Resp. 12, citing <u>Michalowicz v. Vill. of Bedford Park</u>, 528 F.3d 530, 535 (7th Cir. 2008)).

City Surreply 8 further argues that <u>Lee v. City of Chicago</u>, 330 F.3d 456 (7th Cir. 2003) established that the retention of towing and storage fees for investigatory purposes is just, thus precluding Ismael from seeking restitution. Cancels' Surreply Resp. 13 counters that <u>Lee</u> addressed only a substantive due process argument, while Ismael brings a procedural due process argument on behalf of the putative class.

Finally, City Resp. 11 and Surreply 8-9 urge that probable cause and an adequate post-seizure remedy provide all the process

due to a property owner in the context of a criminal investigation and that the post-seizure remedies available to Ismael comply with that standard.  Cancels' Reply 25-26 retorts that City misreads the authority and that Ismael and others like him were not afforded all the process due to them.